IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> ) <br> ) <br> v. ) <br> ) <br> CHUKWUDI MICHAEL OKWARA, ) <br> a/k/a "Collins Bird" ) <br> a/k/a "Larry Eugene Coleman" ) <br> ) <br> ) <br> ) | DOCKET NO. 3:20-CR- 334-RJC <br><br> BILL OF INDICTMENT <br><br> Violations: <br> 18 U.S.C. § 1956(a)(1)(B)(i) <br> 18 U.S.C. § 1957 <br> 18 U.S.C. § 1014 <br> 18 U.S.C. § 1028A |

THE GRAND JURY CHARGES:

At all relevant times:

## INTRODUCTION

1. Beginning sometime before November 2018, and continuing until present, the defendant, CHUKWUDI MICHAEL OKWARA ("OKWARA"), used fraudulent documents to open bank accounts to receive and launder the proceeds of Business Email Compromise ("BEC") scams, a form of cyber-enabled financial fraud that defrauded victim companies of approximately $2 million.

## BUSINESS EMAIL COMPROMISE FRAUD

2. In a typical BEC scheme, a malicious actor compromises legitimate business email accounts through computer intrusion techniques and social engineering and uses those accounts to cause the unauthorized transfer of funds. Techniques for perpetrating these schemes include spear phishing, identity theft, spoofing of emails and websites and the use of malware. BEC fraudsters often target businesses and individuals making wire transfer payments. They then target employees with access to company finances and trick them via email into making wire transfers to bank accounts thought to belong to trusted partner companies with whom they frequently transact business. However, the wires are redirected into alternative bank accounts controlled by the fraudsters and their coconspirators. BEC scammers use sophisticated computer intrusion techniques to alter legitimate payment request emails and invoices, changing the recipient bank account to an account controlled by the fraudsters.

3. One of the common methods BEC schemes employ is the use of "spoofed" email accounts. Spoofed email accounts are accounts that appear to email recipients to be the corporate email accounts of employees who manage company finances at victim companies. Fraudsters use those email accounts to

1

direct partners of a victim company to send money owed in the normal course of business between the companies to a bank account controlled by the fraudster or a coconspirator rather than the intended recipient. Fraudsters direct a victim to wire funds under the disguise of a legitimate business transaction, such as a payment to a vendor for services rendered.

4. Another common method employed in BEC schemes to imitate the email accounts of victim company employees is the use of "lookalike" email accounts. For example, if "Jane Smith" is an employee in the finance department of "Widget Co." company and has a corporate email account named "JaneSmith@WidgetCo.com," a fraudster will create an email account with a similar name or URL (e.g., "JaneSmith@WigdetCo.com") and use that account to contact an employee in the finance department of a company in receipt of an invoice issued by "Widget Co." for payment by that company. The fraudster, posing as Jane Smith, will instruct that individual to remit payment of the invoice to "Widget Co." via a different bank account than that which is legitimately used by "Widget Co." to receive payments. The bank account to which the wire payment has been redirected is controlled by the fraudsters or a coconspirator.

5. The fraudulent emails and computer intrusions described above are sent via interstate wires and the money sent in response to the BEC scam is sent to bank accounts via interstate wires. Therefore, these scams are in violation of the Wire Fraud statute, Title 18, United States Code, Section 1343 and those working together to commit the scams are violating the Fraud Conspiracy statute, Title 18, United States Code, section 1349.

## **MONEY LAUNDERING**

6. In order to collect the proceeds of BEC scams, fraudsters need bank accounts controlled by coconspirators to receive the fraudulently misdirected wire payments. Conspirators use fraudulent and stolen identification documents to register businesses and then open business banking accounts at various financial institutions. These accounts are often opened with synthetic identities, which are fictitious identities created with a combination of real and fabricated information about people, and sometimes entirely fictitious information about people.

7. When the BEC scam is successful and a victim company has wired money to a coconspirator's bank account, bank account records show that the conspirators act quickly to remove the fraudulent funds deposited into the accounts they control. Because the accounts are often opened with synthetic and stolen identities, they were from their inception designed to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the fraud.

8. The Defendant, CHUKWUDI MICHAEL OKWARA, opened and controlled bank accounts at various financial institutions in his own name and with synthetic and stolen identities in the names of Collins Bird, Larry Eugene Coleman, J.M., D.B., and J.P. These bank accounts were generally business accounts in the names of businesses which were registered as an Assumed Business Name with the North Carolina Secretary of State shortly before the bank accounts for those businesses were opened by OKWARA. These sham businesses appeared to have no real operations.

9. The bank accounts opened and controlled by OKWARA were initially funded with relatively small deposits. Victims of the BEC scams were tricked by the fraudulent personas to wire funds

2

into these accounts controlled by OKWARA. The following bank accounts were opened and controlled by OKWARA and used in the fraudulent scheme to launder, or attempt to launder, fraud proceeds:

  a. Collins Bird dba L S Construction, Peoples Bank, Acct. *8269
  b. Larry Eugene Coleman dba Spence Chapin Serv, BB&T Bank, Acct. *3517
  c. J.M., Woodforest Bank, Acct. *4530
  d. Chukwudi M. Okwara dba D.C.A.S., PNC Bank, Acct. *8606
  e. J.P. dba J.M. Co., BB&T Bank, Acct. *1742
  f. D.B. dba SBL Handlers, BB&T Bank, Acct. *2657
  g. D.B. dba O.P.P.B., PNC Bank, Acct. *1923

  10. Shortly following the opening of these accounts, the proceeds of BEC scams were sent into the accounts in the form of large wire transfers directly from victims. Within several days of receipt of the fraudulent wires, OKWARA conducted financial transactions with the fraudulent proceeds. Typically, the financial transactions conducted by OKWARA with BEC fraud proceeds were cash withdrawals, purchases of official checks, and wires to other bank accounts designed in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the BEC scams. OKWARA conducted these financial transactions at financial institution branch offices in the Western District of North Carolina and elsewhere.

  11. Bank accounts controlled by OKWARA were sent at least $2 million by victims of BEC scams. On some occasions, victims and/or their banks realized the transfer was fraudulent and recalled the funds. However, approximately $500,000 was not recalled in time and was received into accounts controlled by OKWARA.

## ENTITIES AND INDIVIDUALS

  12. CHUKWUDI MICHAEL OKWARA, a/k/a Collins Bird, a/k/a Larry Eugene Coleman, was a citizen of Nigeria and resident of North Carolina.

  13. Peoples Bank was a financial institution headquartered in Newton, North Carolina, whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").

  14. BB&T Bank was a financial institution headquartered in Charlotte, North Carolina, whose accounts were insured by the FDIC.

  15. Woodforest Bank was a financial institution headquartered in The Woodlands, Texas, whose accounts were insured by the FDIC.

  16. PNC Bank was a financial institution headquartered in Pittsburgh, Pennsylvania, whose accounts were insured by the FDIC.

  17. Victim Company 1 was a construction company with a principal address in Bettendorf, Iowa that was a victim of the business email compromise scheme.

  18. Victim Company 2 was a citrus company with a principal address in Baltimore, Maryland

that was a victim of the business email compromise scheme.

19. Victim Company 3 was a water solution company with a principal address in Houston, Texas that was a victim of the business email compromise scheme.

20. Victim Company 4 was a pharmaceutical company with a principal address in Atlanta, Georgia that was a victim of the business email compromise scheme.

21. Victim Company 5 was a drilling company with a principal address in Houston, Texas that was a victim of the business email compromise scheme.

22. Victim Company 6 was a Houston, Texas-based company in the business of providing stimulation and coil tubing chemical additives for the oil and gas industry that was a victim of the business email compromise scheme.

## **VICTIM COMPANY 1**

23. On or about November 2, 2018, an Assumed Name Certificate in the name of L S Construction was filed with the North Carolina Secretary of State purportedly by an individual named Collins Bird. Collins Bird was a synthetic identity and did not actually exist.

24. On or about December 20, 2018, OKWARA opened a business bank account at Peoples Bank, account *8269, in the name of Collins Bird dba L C Construction at a Peoples Bank branch located in Charlotte, North Carolina. OKWARA represented that he was Collins Bird and provided a fraudulent social security number and Ohio driver's license to open the account. On or about December 26, 2018, OKWARA changed the name on the account to Collins Bird dba L S Construction.

25. On or about December 21, 2018, Company 1 was the victim of BEC fraud and processed a payment of approximately $209,344.84. As a result of a fraudulent email redirecting payment, Company 1 wired these funds into OKWARA's Peoples Bank account *8269.

26. On or about December 21, 2018, OKWARA participated in the transfer of the fraud proceeds, through his account *8269 at Peoples Bank, by receiving the $209,344.84 payment intended for Company 1's business partner.

27. Thereafter, OKWARA quickly transferred and caused to be transferred the fraud proceeds out of Peoples Bank account *8269 through a series of financial transactions knowing that the transactions were designed to conceal, in whole and in part, the nature, location, source, ownership, and control of the fraud proceeds as set forth below:

| Approximate Date | Recipient | Method of Transfer | Amount |
|---|---|---|---|
| 12/22/18 | N/A | Cash withdrawal | $6,000 |
| 12/22/18 | Purchase of official check payable to D.M. | Check # 714618 | $8,500 |
| 12/24/18 | N/A | Cash withdrawal | $8,500 |

| 12/26/18 | N/A | Cash withdrawal | $6,000 |
| 12/26/18 | Purchase of official check payable to D.M. | Check # 714619 | $8,950 |

28. OKWARA, posing as D.M., subsequently cashed checks numbered 714618 and 714619 in the amounts of $8,500 and $8,950, respectively. D.M. was a real person who did not authorize OKWARA to cash checks in his name.

## VICTIM COMPANY 2

29. On or about April 2, 2019, an Assumed Name Certificate in the name of Spence Chapin Serv was filed with the North Carolina Secretary of State purportedly by an individual named Larry Eugene Coleman. Larry Eugene Coleman was a synthetic identity and did not actually exist.

30. On or about April 4, 2019, a business bank account was opened at BB&T Bank, account *3517, in the name of Larry Eugene Coleman dba Spence Chapin Serv at a BB&T Bank branch located in Concord, North Carolina. This account was under the control of OKWARA.

31. On or about May 20, 2019, Company 2 was the victim of BEC fraud and processed a payment of approximately $171,500. As a result of a fraudulent email redirecting payment, Company 2 wired these funds into OKWARA's BB&T Bank account *3517 in two wires.

32. On or about May 20, 2019, OKWARA participated in the transfer of the fraud proceeds, through his account *3517 at BB&T Bank, by receiving the $171,500 payment intended for Company 2's business partner.

33. Thereafter, OKWARA quickly transferred and caused to be transferred the fraud proceeds out of BB&T account *3517 through a series of financial transactions knowing that the transactions were designed to conceal, in whole and in part, the nature, location, source, ownership, and control of the fraud proceeds as set forth below:

| Approximate Date | Recipient | Method of Transfer | Amount |
|---|---|---|---|
| 5/21/19 | Purchase of official check payable to cash | Check # 7058831 | $6,000 |
| 5/22/19 | Purchase of official check payable to cash | Check # 7058834 | $8,500 |
| 5/22/19 | Uban PLC | Wire # 8276 | $54,950 |
| 5/23/19 | Purchase of official check payable to cash | Check # 8563379 | $14,410 |
| 5/24/19 | Purchase of official check payable to cash | Check # 7063353 | $9,000 |

## VICTIM COMPANY 3

34. On or about June 13, 2019, a bank account was opened at Woodforest Bank, account *4530, in the name of J.M. at a bank branch located in Tega Cay, South Carolina. J.M. was a real person who did not open this bank account.

35. On or about July 29, 2019, Company 3 was the victim of BEC fraud and attempted to wire funds to Woodforest account *4530, which was controlled by OKWARA. This attempted payment was rejected by the bank.

36. On or about July 30, 2019, an Assumed Name Certificate in the name of J.M. Co. was filed with the North Carolina Secretary of State purportedly by an individual named J.P. J.P. was a real person who did not file these documents.

37. On or about July 30, 2019, a business bank account was opened at BB&T Bank, account *1742, in the name of J.P. dba J.M. Co. at a BB&T Bank branch located in Monroe, North Carolina. OKWARA fraudulently represented that he was J.P. and provided J.P.'s personal identification information to open the account. J.P.'s personal identification information was used to open account *1742 without his authorization. OKWARA had control of account *1742 and represented himself to be J.P. when accessing the account.

38. On or about August 8, 2019, Company 3 was the victim of BEC fraud and processed a payment of approximately $225,541.80. As a result of a fraudulent email redirecting payment, Company 3 wired these funds into OKWARA's BB&T Bank account *1742.

39. On or about August 8, 2019, OKWARA participated in the transfer of the fraud proceeds, through his account *1742 at BB&T Bank, by receiving the $225,541.80 payment intended for Company 3's business partner.

40. Thereafter, OKWARA quickly transferred and caused to be transferred the fraud proceeds out of BB&T Bank account *1742 through a series of financial transactions knowing that the transactions were designed to conceal, in whole and in part, the nature, location, source, ownership, and control of the fraud proceeds as set forth below:

| Approximate Date | Recipient | Method of Transfer | Amount |
|---|---|---|---|
| 8/9/19 | Purchase of official check payable to cash | Check # 8454462 | $7,000 |
| 8/9/19 | Purchase of official check payable to cash | Check # 8865361 | $8,500 |
| 8/9/19 | Purchase of official check payable to cash | Check # 8865362 | $45,010 |

6

## VICTIM COMPANY 4

41. On or about August 22, 2019, an Assumed Name Certificate in the name O.P.P.B. was filed with the North Carolina Secretary of State purportedly by an individual named D.B. D.B. was a real person who did not file these documents.

42. On or about September 16, 2019, OKWARA opened a business bank account at PNC Bank, account *1923, in the name of D.B. dba O.P.P.B. at a PNC Bank branch located in Monroe, North Carolina. OKWARA fraudulently represented that he was D.B. and provided a fraudulent social security number and fraudulent Maine driver's license to open the account. D.B.'s personal identification information was used to open account *1923 without his authorization. OKWARA had control of account *1923 and represented himself to be D.B. when accessing the account.

43. On or about September 25, 2019, Company 4 was the victim of BEC fraud and processed a payment of approximately $93,600. As a result of a fraudulent email redirecting payment, Company 4 wired these funds into OKWARA's PNC Bank account *1923.

44. On or about September 25, 2019, OKWARA participated in the transfer of the fraud proceeds, through his account *1923 at PNC Bank, by receiving the $93,600 payment intended for Company 4's business partner.

45. Thereafter, OKWARA quickly transferred and caused to be transferred the fraud proceeds out of PNC Bank account *1923 through a series of financial transactions knowing that the transactions were designed to conceal, in whole and in part, the nature, location, source, ownership, and control of the fraud proceeds as set forth below:

| Approximate Date | Recipient | Method of Transfer | Amount |
|---|---|---|---|
| 9/26/19 | N/A | Cash withdrawal | $9,200 |
| 9/27/19 | N/A | Cash withdrawal | $14,000 |
| 9/27/19 | City Solutions | Fed. Wire # *GA7RC | $38,000 |

46. On or about September 27, 2019, OKWARA, posing as D.B., used the fraud proceeds withdrawn in cash from PNC Bank account *1923 to purchase a certified bank check, numbered 680217, in the amount of $10,000 to the order of J.M. On or about October 1, 2019, OKWARA, posing as J.M., cashed the check at a PNC Bank branch in Charlotte, North Carolina.

## VICTIM COMPANY 5

47. On or about September 11, 2019, an Assumed Name Certificate in the name SBL Handlers and City Solutions was filed with the North Carolina Secretary of State purportedly by an individual named D.B. D.B. was a real person who did not file these documents.

48. On or about September 13, 2019, OKWARA opened a business bank account at BB&T Bank, account *2657, in the name of D.B. dba SBL Handlers at a PNC Bank branch located in Harrisburg,

7

North Carolina. OKWARA fraudulently represented to BB&T Bank that he was D.B. and provided a fraudulent social security number and fraudulent Maine driver's license to open the account. D.B.'s personal identification information was used to open account *2657 without his authorization. OKWARA had control of account *2657 and represented himself to be D.B. when accessing the account.

49. On or about September 27, 2019, Company 5 was the victim of BEC fraud and processed a payment of approximately $62,728.98. As a result of a fraudulent email redirecting payment, Company 5 wired these funds into OKWARA's BB&T Bank account *2657.

50. On or about September 27, 2019, OKWARA participated in the transfer of the fraud proceeds, through his account *2657 at BB&T Bank, by receiving the $62,728.98 payment intended for Company 5's business partner.

51. Thereafter, OKWARA quickly transferred and caused to be transferred the fraud proceeds out of BB&T Bank account *2657 through a series of financial transactions knowing that the transactions were designed to conceal, in whole and in part, the nature, location, source, ownership, and control of the fraud proceeds as set forth below:

| Approximate Date | Recipient | Method of Transfer | Amount |
|---|---|---|---|
| 10/2/19 | Purchase of official check payable to cash | Check # 7308621 | $8,500 |

## VICTIM COMPANY 6

52. On or about June 27, 2019, an Assumed Name Certificate in the name D.C.A.S. was filed with the North Carolina Secretary of State. D.C.A.S. was registered in order to resemble a real company named D.C.S.

53. On or about June 28, 2019, OKWARA opened a business bank account at PNC Bank, account *8606, in the name D.C.A.S. at a PNC Bank branch located in Charlotte, North Carolina. OKWARA fraudulently represented to PNC Bank in his application that he was the owner of a legitimate business named D.C.A.S., when in fact, OKWARA had registered the name D.C.A.S. in order to appear similar to another business named D.C.S., and D.C.A.S. was not a real business and lacked any operations.

54. On or about October 15, 2019, Company 6 was the victim of BEC fraud and processed a payment of approximately $1,316,243.15, which was intended for D.C.S. As a result of a fraudulent email redirecting payment, Company 6 wired these funds into OKWARA's PNC Bank account *8606.

## COUNTS ONE THROUGH SEVENTEEN
### 18 U.S.C. § 1956(a)(1)(B)(i)

55. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through 54 of the Bill of Indictment, and further alleges that:

8

56. On or about the dates listed below, in the Western District of North Carolina, and elsewhere, the defendant CHUKWUDI MICHAEL OKWARA did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the transactions described below, which involved the proceeds of a specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Approximate Date | Recipient | Financial Transaction | Bank Account | Amount |
|---|---|---|---|---|---|
| 1 | 12/22/18 | N/A | Cash withdrawal | Peoples Bank acct. *8269 | $6,000 |
| 2 | 12/22/18 | Purchase of official check payable to D.M. | Check # 714618 | Peoples Bank acct. *8269 | $8,500 |
| 3 | 12/24/18 | N/A | Cash withdrawal | Peoples Bank acct. *8269 | $8,500 |
| 4 | 12/26/18 | N/A | Cash withdrawal | Peoples Bank acct. *8269 | $6,000 |
| 5 | 12/26/18 | Purchase of official check payable to D.M. | Check # 714619 | Peoples Bank acct. *8269 | $8,950 |
| 6 | 5/21/19 | Purchase of official check payable to cash | Check # 7058831 | BB&T Bank acct. *3517 | $6,000 |
| 7 | 5/22/19 | Purchase of official check payable to cash | Check # 7058834 | BB&T Bank acct. *3517 | $8,500 |
| 8 | 5/22/19 | Uban PLC | Wire # 8276 | BB&T Bank acct. *3517 | $54,950 |
| 9 | 5/23/19 | Purchase of official check payable to cash | Check # 8563379 | BB&T Bank acct. *3517 | $14,410 |
| 10 | 5/24/19 | Purchase of official check payable to cash | Check # 7063353 | BB&T Bank acct. *3517 | $9,000 |
| 11 | 8/9/19 | Purchase of official check payable to cash | Check # 8454462 | BB&T Bank acct. *1742 | $7,000 |
| 12 | 8/9/19 | Purchase of official check payable to cash | Check # 8865361 | BB&T Bank acct. *1742 | $8,500 |
| 13 | 8/9/19 | Purchase of official check payable to cash | Check # 8865362 | BB&T Bank acct. *1742 | $45,010 |
| 14 | 9/26/19 | N/A | Cash withdrawal | PNC Bank acct. *1923 | $9,200 |
| 15 | 9/27/19 | N/A | Cash withdrawal | PNC Bank acct. *1923 | $14,000 |
| 16 | 9/27/19 | City Solutions | Fed. Wire # *GA7RC | PNC Bank acct. *1923 | $38,000 |
| 17 | 10/2/19 | Purchase of official check payable to cash | Check # 7308621 | BB&T Bank acct. *2657 | $8,500 |

9

All in violation of Title 18 United States Code Sections 1956(a)(1)(B)(i) and 2.

## COUNTS EIGHTEEN THROUGH TWENTY-TWO
## 18 U.S.C. § 1957

57. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through 54 of the Bill of Indictment, and further alleges that:

58. On or about the dates set forth below, in the Western District of North Carolina, and elsewhere, the defendant CHUKWUDI MICHAEL OKWARA did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of funds from the banks accounts set forth below, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343:

| Count | Approximate Date | Recipient | Financial Transaction | Bank Account | Amount |
|---|---|---|---|---|---|
| 18 | 5/22/19 | Uban PLC | Wire # 8276 | BB&T Bank acct. *3517 | $54,950 |
| 19 | 5/23/19 | Purchase of official check payable to cash | Check # 8563379 | BB&T Bank acct. *3517 | $14,410 |
| 20 | 8/9/19 | Purchase of official check payable to cash | Check # 8865362 | BB&T Bank acct. *1742 | $45,010 |
| 21 | 9/27/19 | N/A | Cash withdrawal | PNC Bank acct. *1923 | $14,000 |
| 22 | 9/27/19 | City Solutions | Fed. Wire # *GA7RC | PNC Bank acct. *1923 | $38,000 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT TWENTY-THREE
## 18 U.S.C. § 1014

59. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through 22 and 34 through 40 of the Bill of Indictment, and further alleges that:

60. On or about July 30, 2019, in Union County, within the Western District of North Carolina, and elsewhere, the defendant,

**CHUKWUDI MICHAEL OKWARA,**

knowingly made a false statement for the purpose of influencing BB&T Bank, a financial institution the accounts of which are insured by the FDIC, in connection with a bank account application, in that the defendant submitted and caused to be submitted false account opening documents, including falsely

stating in his application that he was the person known as J.P., when in truth and in fact, as the defendant well knew, the defendant was not.

All in violation of Title 18, United States Code, Section 1014.

## COUNT TWENTY-FOUR
### 18 U.S.C. § 1014

61. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through 22 and 41 through 46 of the Bill of Indictment, and further alleges that:

62. On or about September 16, 2019, in Union County, within the Western District of North Carolina, and elsewhere, the defendant,

**CHUKWUDI MICHAEL OKWARA,**

knowingly made a false statement for the purpose of influencing PNC Bank, a financial institution the accounts of which are insured by the FDIC, in connection with a bank account application, in that the defendant submitted and caused to be submitted false account opening documents, including falsely stating in his application that he was the person known as D.B., when in truth and in fact, as the defendant well knew, the defendant was not.

All in violation of Title 18, United States Code, Section 1014.

## COUNT TWENTY-FIVE
### 18 U.S.C. § 1014

63. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through 22 and 52 through 54 of the Bill of Indictment, and further alleges that:

64. On or about June 28, 2019, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

**CHUKWUDI MICHAEL OKWARA,**

knowingly made a false statement for the purpose of influencing PNC Bank, a financial institution the accounts of which are insured by the FDIC, in connection with a bank account application, in that the defendant submitted and caused to be submitted false account opening documents, including falsely stating in his application that he owned and operated a legitimate business named D.C.A.S., when in truth and in fact, as the defendant well knew, D.C.A.S. not a legitimate business and had no real operations.

All in violation of Title 18, United States Code, Section 1014.

## COUNT TWENTY-SIX
## 18 U.S.C. § 1028A

65. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through 22 and 34 through 40 of the Bill of Indictment, and further alleges that:

66. On or about July 30, 2019, in Union County, within the Western District of North Carolina, and elsewhere, the defendant,

**CHUKWUDI MICHAEL OKWARA,**

did knowingly use, without lawful authority, a means of identification of another person, specifically, the name and unique electronic identification number of J.P., during and in relation to the commission of one or more federal felony violations, to include, making a false statement to a bank (18 U.S.C. § 1014), as charged in Count Twenty-Three.

All in violation of Title 18, United States Code, Section 1028A(a)(1) and (b).

## COUNT TWENTY-SEVEN
## 18 U.S.C. § 1028A

67. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs one through 22 and 41 through 46 of the Bill of Indictment, and further alleges that:

68. On or about September 16, 2019, in Union County, within the Western District of North Carolina, and elsewhere, the defendant.

**CHUKWUDI MICHAEL OKWARA,**

did knowingly use, without lawful authority, a means of identification of another person, specifically, the name and unique electronic identification number of D.B., during and in relation to the commission of one or more federal felony violations, to include, making a false statement to a bank (18 U.S.C. § 1014), as charged in Count Twenty-Four.

All in violation of Title 18, United States Code, Section 1028A(a)(1) and (b).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c). The following property is subject to forfeiture in accordance with Section 982, 853, and/or 2461(c):

    a.    All property involved in the violations set forth in this bill of indictment or

traceable to property involved in such violations; and

      b.     If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds stated above: a forfeiture money judgment in the amount of at least $494,256, such amount constituting the proceeds of and property involved in the alleged offenses.

A TRUE BILL



GRAND JURY FOREPERSON

R. ANDREW MURRAY
UNITED STATES ATTORNEY

MATTHEW T. WARREN
ASSISTANT UNITED STATES ATTORNEY

13